## JOSEPH STRUNK v. WELLS BROTHERS COMPANY and Another.[1]

December 20, 1912.

Nos. 17,782—(121).

**Verdict not sustained by evidence.**
In this a personal injury action, the evidence examined, and *held* not to sustain the verdict, in that it fails to show the defendants guilty of any negligence.

[1] Reported in 138 N. W. 1030.

Action in the district court for Ramsey county to recover $5,000 for personal injuries. The answer alleged that the building was being constructed pursuant to a contract between defendants; that the contract did not provide or permit defendant Arcade Investment Company to exercise any control whatever as to the manner or method of constructing the building, or doing the work, and that company did not at any time give any directions as to how the work should be accomplished, and that the contract was an independent one. The answer admitted that in the construction of the building a wooden scaffold was used near a roadway on the premises; that as plaintiff was hauling a load of material for use in the construction of the building he negligently struck a support of the scaffold; that it was broken by the force of the collision and some boards from the scaffold fell upon him whereby he sustained injuries; that he was familiar with the roadway, the scaffold and the premises and that his injuries were caused by his own negligence.

The case was tried before Kelly, J., who denied defendants' motion to direct a verdict in their favor, and a jury which returned a verdict in favor of plaintiff for $800. From the judgment entered pursuant to the verdict, defendants appealed. Reversed.

*P. J. McLaughlin,* for appellants.

*John D. O'Brien* and *Dillon J. O'Brien,* for respondent.

HOLT, J.

In this a personal injury action, defendants appeal from the judgment entered in favor of plaintiff; their motion for directed verdict having been denied, as well as a motion for judgment notwithstanding the verdict. The only assignment of error necessary to consider is that the evidence fails to show defendants negligent. These appear to be the facts:

The defendants are corporations. The Wells Brothers Company was erecting a large business block for the Arcade Investment Company fronting west on St. Peter street, between Fourth and Fifth streets in St. Paul, Minnesota. For about three months prior to the accident resulting in plaintiff's injury, he had been hauling crushed rock used in the concrete work of the building, hauling three or four

loads each day. For convenience and safety a high fence had been erected inclosing the sidewalks adjacent to the building and part of the streets. On St. Peter street, near the middle of the building, there was a gate through which the teams passed in with materials for the structure, driving along and upon the sidewalk space.

It also appears that as the building arose it was necessary to protect these teams and drivers and other workmen from material which might drop down from above, and to that end a covered way was constructed by placing a row of posts close to the building and a corresponding row near the fence mentioned, and a beam or joist was spiked with one end to the post near the building and the other to the corresponding one near the fence and at a height so that, with the braces placed slanting and somewhat lower, a man standing on the load as he drove underneath would not come in contact with the joists and braces. It does not clearly appear how far each set of posts was away from the adjoining set, but from an examination of the photographs in evidence it appears to be from 15 to 20 feet. Each set was connected with the next adjoining by joists and braces. The distance between the posts nearest the building and those nearest the fence was 13 or 14 feet, except that, near the gate spoken of, the outside post was 25 feet 8 inches from the corresponding one near the building, so as to allow the turning of the teams and wagons in going upon the sidewalk. On top of the joists mentioned planks or boards were laid, covering the driveway on the sidewalk, and thus protecting the men and teams using it from falling material.

A watchman, presumably in the employ of defendant Wells Brothers Company, was stationed at the gate and directed the order in which the teams were to drive in. Plaintiff was not in the employ of either defendant, but hauled the crushed rock at so much per load for the one who furnished it to the concrete contractor.

On June 13, 1911, as plaintiff and two other teamsters approached the gate with loads of crushed rock, a team with a load of brick also drove up. The watchman directed the brick load to go in first. As the last team drove in, it turned to the right and stopped as near to the outside posts as it could, so as to allow the brick to be unloaded and piled near the fence. Concluding that there was room for the

teams with the crushed rock to drive in to a place provided for unloading in the covered driveway beyond where the team with the brick load was to unload, the watchman directed Bieren, driving the first load of crushed rock, to drive in, and plaintiff to follow. The space was so narrow that one of the hubs on Bieren's wagon caught in the wagon with the brick load. The teamsters pried them apart, and Bieren drove on to his place of unloading. Then plaintiff, standing upon his load, attempted to pass by the brick load, driving up as far toward the building as he could, and then making a sharp turn to the right to pass inside of the brick wagon.

In so doing he either drove too far before turning, so that the wagon tongue squarely struck the post next to the building, breaking it in two, as defendants contend, or else, as plaintiff claims, after he had made the turn, and just as he was about to pass the brick wagon, one of the front wheels struck a brick or rock, and the load, being very heavy, threw the team over toward the building, so that the neck yoke or tongue struck and broke the post. When the post broke, that part of the covered way which it supported sagged so that some of the planks fell down; one striking plaintiff on his shoulder, whereby he was thrown off the load, and in the fall his leg was broken.

Along the posts spoken of as next to the building was laid on the ground a wooden box a foot high and six inches wide in which cables ran. The box was laid against the posts, and served to protect them from the teams and the hubs of the wagons as these passed along the driveway.

The allegation of negligence is as follows: "Defendants maintained * * * a wooden scaffolding [the covered driveway above described], which was by the defendants negligently and carelessly built and maintained, of insufficient and unsuitable materials, insufficiently nailed, braced, designed, and constructed, and negligently placed, built, and maintained in such position and proximity to the place of ingress and egress to and from said premises that it would be liable to be struck by persons, teams, or materials coming upon or being brought upon said premises and so weak, insufficient,

and improperly constructed as to be liable to fall upon the application of slight force, or being struck by persons, teams, or material coming upon or being brought upon said premises."

There was no evidence or claim of any defect in the construction of this covered driveway, except that the post which broke was closer to the driveway than the others, and that it was burned to some extent, at least on one side. There is some confusion in the record as to which post broke, the first or the second, beginning with the pair immediately to the right of the gate as one passed in toward the building; but it is plain from the photographs in evidence that all of the posts next to the building were placed up against the cable box spoken of, and certainly no negligence may be predicated on this position, for it is apparent that they were fully protected from the wagons by the box, and it could not be reasonably apprehended that the drivers would drive the teams over or against the box so far as to endanger the posts on the other side by the pole or neck yoke.

There remains then, only the alleged defect in the post which broke. The evidence is fairly certain that these timbers were substantial and of ample strength for the purpose intended, being 4 inches through one way and 6 inches the other. The only defect testified to by any of plaintiff's witnesses was that this post which broke had been charred or burned. One witness, Mr. Bieren, said: "The post was a little burned around the outside, but how much I didn't measure. I didn't look particularly, but the post was burned. * * * It was pretty near burned all the way round; yes. One side of it wasn't just exactly burned, but it was kind of black; but one side of it was burned about an inch deep." This witness also testified that this post was 5 or 6 inches square. The teamster who hauled the third load of crushed rock and who saw the accident, having testified to the post being burned, when asked how much, answered: "Well, I couldn't just tell; I didn't look at it close just how much was burned; I could see it was burned around." But these witnesses testified that they had observed that this particular post stood nearer the driveway than the others, but had never noticed that it was burned before the accident.

Defendants produced, at the trial, what was claimed to be one part

120 M. 6.

of the broken post, a sound piece of hemlock timber 4 by 6 inches, with no indication of crack, knot, or weakness at the point where it did break square off. It was somewhat scorched its whole length but not so as to affect its strength. Several of defendants' witnesses positively identified this piece as one of the two parts into which the post broke when the neck yoke or pole of plaintiff's team struck it. No attempt was made by plaintiff to dispute defendants' contention that the piece produced at the trial was the very piece that broke, either by calling in rebuttal his two witnesses who had noticed and testified to the condition of the post or by any other witness.

We have carefully scanned the record to see if there might be any basis on which the judgment can be sustained, but have failed. There certainly, as before stated, could be no negligence in the location of this post; for by the uncontroverted testimony of plaintiff's witnesses, and the concededly accurate photographs, it was protected, like the rest of the posts next to the building, by the cable box before mentioned. And it is manifest, also, from the photographs and the evidence, that this post, as well as each of the others, was of ample strength to sustain the weight it was designed to carry and any ordinary jar which might be anticipated. It is also clear that it was securely braced and anchored, both at the bottom and top, because it broke squarely off by the impact, and was not torn loose at either end.

This covered driveway was a temporary structure, to protect the workmen and teams while the building was being built, and common knowledge teaches that as to such the same care is not taken as to location or solidity of construction as is taken in case of permanent structures. It is also entirely obvious that those constructing a driveway similar to this one, or any scaffolding around a building being erected, do not anticipate that teams will be driven against them with any considerable force, because no temporary building scaffold or structure to serve the purpose of the one in question could withstand the impact of a heavy team or wagon. And the force directed against the post in this case must have been of unusual violence to have caused the break. How long this driveway had existed does not appear, although it does appear that the covering just above where

the post broke was then being placed. The posts had, however, been in place for some time, and plaintiff was fully acquainted with the situation, and knew that it was extremely difficult to pass the brick wagon, still he undertook to drive in.

Accepting, as we must, the most favorable view of the testimony for plaintiff as to defendants' negligence, we are nevertheless forced to the conclusion that the record fails to show any, and, assuming that plaintiff was free from negligence, the deplorable accident was due to the fact, which he admits, that one of the front wheels came in contact with some obstruction, thereby unexpectedly throwing the pole or neck yoke against the post with sufficient force to break a post that as far as the evidence shows was of ample size and strength to carry all the strain which might reasonably be expected that it would be subjected to. We may assume that defendants owed plaintiff the same duty they would owe their own servants to make the driveway reasonably safe. However, they are not to be held as insurers of safety. Plaintiff knew that it was difficult to pass the brick wagon. He could observe as well as any one if obstructions were in the way. He, as well as his witnesses, his fellow teamsters, claim that they had particular occasion to notice this post, because of its location; but none had seen that it was in any manner defective or burned until after the accident. We do not think it possible, in whatever light this evidence is viewed, to hold the defendants on any ground of negligence responsible for this accident in which plaintiff was injured.

The judgment appealed from must therefore be reversed, with direction to enter judgment in favor of defendants.